## SUPREME COURT.

THE PEOPLE *ex. rel.* CHARLES KERBER *et al.* agt. THE CITY
OF UTICA, &c.

*Assessment for repairing sewers — the provisions of the statute as to local
assessments, to be strictly construed and followed.*

The provisions of the statute in relation to the levy and collection of local
assessments must be strictly construed and followed.
Where, by the city charter, it was provided as follows : Section 108 of the
Utica city charter as revised in 1862 (*chap.* 18, *Laws of* 1862) which pro-
vides for the repairing of sewers, and the expense arising under that
section is to be assessed and collected in the same manner as the expense
of *constructing* a sewer is assessed and collected. The assessment and
collection of the expense for the construction of sewers is provided for
by second subdivision of section 99 of the charter, which directs that
three disinterested freeholders of the city shall be appointed by the
common council to assess the expense of constructing sewers :
*Held,* that where the assessment was made by three individuals who do
not appear to have been appointed assessors, nor do they appear to have
been freeholders, as required by sections 99 and 108 of the charter, the
assessment should be set aside and annulled.

*Oneida County, Special Term, November,* 1879.

THIS was a return made by the city of Utica, &c., to a
common law writ of *certiorari* issued to review the proceed-

ings of said city and its officers in levying a local assessment to pay the expense of repairing a sewer. The facts are stated in the opinion.

*Linsley & Dunmore*, for relators.

*J. Thomas Spriggs*, for repondents.

Noxon, *J.*— Upon the complaint of Charles Kerber and others, presented to a special term of the supreme court, held at Utica, Oneida county, December 31, 1877, a writ of *certiorari* was issued, directed to the city of Utica and the common council thereof. The writ commanded the parties to whom it was directed to certify a copy of the proceedings of said council in relation to a sewer in Whitesboro street in said city, the expense of repairing and relaying the same, and the assessment levied for the expense thereof. The complainants claim that the proceedings of the council in relation to the assessment, prior to its levy, and in making the assessment were erroneous, irregular and illegal, and in disregard of the city charter. A return and amended return to the writ were thereafter made in obedience to the command contained in the writ, and an order of special term requiring an amendment thereto.

The argument upon the questions raised, upon the return to the writ, was made before the court at special term.

It appears, from the return, that at a meeting of the common council of the city, held on the 27th day of April, 1877, a resolution was adopted authorizing and directing the street commissioner to repair and relay such portion of the sewer in question, as might be necessary to put it in good order; the judgment of the council being that the work could not be judiciously let on contract; the expense of doing the work to be assessed upon the property benefited, in accordance with the provisions of the city charter. Thereafter, and on August third, the council certified that the relaying and repairing had

been finished, and adopted a resolution appointing three free-holders to assess the cost of repairing and relaying the sewer.

On August seventeen the following resolution was offered, as appears by a copy of the proceedings of the common council, of that date, printed in the official paper of the city, signed by the city clerk, and made a part of the return, to wit:

*Resolved*, That the assessment for the construction of sewers in State and Whitesboro streets be annulled, and that George Ralph, John Bennett and Michael Barrigan be appointed assessors to assess the same.

This resolution does not appear, by the record of the council, to have been passed or adopted, although in the return outside the record it is stated that said assessors were appointed, and that they were "known to us to be three disinterested freeholders of the city of Utica to assess, and that a resolution to that effect was duly adopted." The statement in the return as to what took place at that meeting outside the regular proceedings of the council, which were had and taken at the meeting, and incorporated into the minutes by the clerk, cannot be taken into account. The record must govern. The resolution, as offered, does not appear to have been voted upon or adopted; nor does it appear, by the resolution or from any thing else in the minutes of the proceedings of the council, that the three men whom the return, outside of the record, states to have been appointed were freeholders. It is certified that the persons named in the resolution made the assessment; that the roll was signed and filed by the proper officers; and that a duplicate was signed and delivered to the collector for collection. The proceedings were taken under section 108 of the Utica city charter as revised in 1862 (*chap.* 18, *Laws of* 1862), which provides for the repairing of sewers; and the expense arising under that section is to be assessed and collected in the same manner as the expense of *constructing* a sewer is assessed and collected.

The assessment and collection of the expense for the construction of sewers is provided for by the second subdivision

of section 99 of the charter, which directs that three disinterested freeholders of the city shall be appointed by the commen council to assess the expense of constructing sewers. The rule is too well settled to require citation of authorities, that the provisions of the statute, in relation to the levy and collection of local assessments, must be strictly construed and followed.

In this case the assessment was made by three individuals who do not appear to have been appointed assessors, nor do they appear to have been freeholders, as required by sections 99 and 108 of the statute. The assessment should be set aside and annulled, with costs.